**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 3, 2026

**By ECF**
The Honorable Colleen McMahon
United States District Judge
500 Pearl Street
New York, New York 10007

**Re: *United States v. Brian McFadden*, S1 26 Cr. 31 (CM)**

Dear Judge McMahon:

The Government respectfully submits this letter in advance of sentencing. A sentence below the Guidelines range of 4 to 10 months' imprisonment, but above the 3 years' probation imposed on codefendant Christopher B. Ferguson, as well as a fine of $50,000 and $75,207.70 in forfeiture, would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I. Offense Conduct

Brian McFadden, the defendant, created false books and records of Edison Nation, Inc. ("Edison Nation"), a publicly traded company for which he served as a consultant. McFadden willfully and knowingly caused the submission of a falsified book, record, and account in response to an inquiry by the Financial Industry Regulatory Authority ("FINRA") in order to conceal the fact that Edison Nation had not, in fact, received a purchase order it previously announced publicly to investors.

Edison Nation was a diversified consumer products business that, among other things, helped entrepreneurs bring new products to market. Beginning in March 2020, following the emergence of the COVID-19 pandemic, Edison Nation expanded its business to include products such as hand sanitizer and N95 face masks that were in high demand as a result of the pandemic. On April 16, 2020, Edison Nation issued a press release announcing that it had "received over $10 million in orders for the purchase of personal protective equipment," with those orders including products such as "gel-based hand sanitizer, liquid sanitizer, and protective masks . . . ." The company also filed its press release with the U.S. Securities and Exchange Commission in a Form 8-K filing. (PSR ¶¶ 10-11).

Although McFadden, Ferguson (the chairman and chief executive officer of Edison Nation), and others working for Edison Nation had discussed a $9 million hand sanitizer purchase with a potential buyer ("Buyer-1") earlier that month, two days before the issuance of the press release, Buyer-1 notified Edison Nation by email that Buyer-1 was "unable to proceed" with the transaction. That anticipated $9 million purchase order formed the basis of the majority of the over $10 million in orders subsequently announced in the company's April 16 press release. As a result, Edison Nation did not, in fact, have over $10 million in orders at the time the press release was

issued and the Form 8-K was filed. On that same date, after the issuance of the press release, Edison Nation's share price increased 197% by market open, and McFadden sold over 30,000 shares of Edison Nation stock, realizing approximately $75,207.70 more than he would have if he had sold before the issuance of the press release. (PSR ¶ 12).

On April 23, 2020—approximately one week after the press release issued—FINRA contacted Edison Nation to request that Edison Nation provide FINRA with, among other things, copies of the purchase orders supporting the $10 million in purchase orders referenced in the press release. (PSR ¶ 13).

On April 24, 2020, an employee of a company ("Company-1") that had recently placed orders for personal protective equipment with Edison Nation emailed Ferguson in response to a request from Ferguson for purchase orders. The employee stated that the employee had "sent over 4 [Purchase Orders] this morning for you and you should have more on Monday. We should easily be able to get you over $10M by Monday, April 27th." Ultimately, Company-1 placed only approximately $2.64 million in orders by April 27, 2020. (PSR ¶ 14).

On April 27, 2020, McFadden asked a business associate at another company ("Company-2") to create a $9 million backdated purchase order for hand sanitizer. In response, Company-2 provided McFadden with the requested purchase order backdated to April 12, 2020 (the "Company-2 Purchase Order"). In the process of creating the Company-2 Purchase Order, McFadden and the associate at Company-2 exchanged a series of text messages. In those messages, McFadden told the associate at Company-2 that he needed "a major favor," asked the associate to send Company-2's logo, and told the associate, "[I] made [the purchase order] nice for you[.] . . . i'll send it back for your approval." The Company-2 Purchase Order was not a bona fide order. (PSR ¶ 15).

On April 28, 2020, McFadden and Ferguson knowingly caused the submission to FINRA of the Company-2 Purchase Order, along with a spreadsheet falsely listing the Company-2 Purchase Order as having been received on April 12, 2020. Then, on May 6, 2020, counsel for Edison Nation caused the submission to FINRA of a second email that included another copy of the Company-2 Purchase Order and contained false and misleading statements about the Company-2 Purchase Order, including that "[o]n April 12, 2020, [Edison Nation] received a verbal order from [Company-2] for $9.0 million," that "[o]n April 13, 2020, [Edison Nation] received a[n] additional written purchase order from [Buyer-1] for $9.0 million for the exact same supply," that "[Edison Nation] did not have sufficient supply to fulfill both [Company-2]'s and [Buyer-1]'s purchase orders" and that "[a]s a result, and due to [Edison Nation]'s long business relationship with [Company-2], [Edison Nation] elected to fulfill [Company-2]'s purchase order and not fulfill [Buyer-1]'s purchase order." In truth, it was Buyer-1, not Edison Nation, that had elected not to proceed with the transaction, and Edison Nation had not received any order from Company-2 on or before April 12, 2020. (PSR ¶¶ 16-17).

## II. Procedural History, Guidelines, and Forfeiture

On March 16, 2026, McFadden voluntarily self-surrendered, waived indictment, and pled guilty, pursuant to a plea agreement, to the sole count of the Superseding Information, S1 26 Cr. 31 (CM), which charged him with falsification of books, records, and accounts, in violation of

Title 15, United States Code, Sections 78m(b)(2), 78m(b)(5); and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-1; and Title 18, United States Code, Section 2. (PSR ¶¶ 1-2, 19). That count of conviction carries a maximum term of imprisonment of twenty years, a maximum term of supervised release of three years, a maximum fine of $5,000,000, and a $100 mandatory special assessment. (PSR ¶¶ 82, 86, 91-92).

The plea agreement and the PSR agree on the Guidelines calculation. Pursuant to U.S.S.G. § 2B1.1(a)(1), because an offense under 15 U.S.C. § 78ff is referenced to U.S.S.G. § 2B1.1 and has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7. Pursuant to U.S.S.G. § 2B1.1(b)(1)(D), the loss in this matter is zero because the offense of conviction did not result in any reasonably foreseeable pecuniary harm (*i.e.*, no actual loss under Note (C)(i) to the Loss Table under U.S.S.G. § 2B1.1(b)(1)), nor did McFadden purposely seek to inflict pecuniary harm (*i.e.*, no intended loss under Note (C)(ii) to the Loss Table). Using the alternative method of gain, per Application Note 3(B), McFadden profited from the conduct $75,207.70 (*i.e.*, more than $40,000 but not more than $95,000), so the offense level is increased by 6 levels. Pursuant to U.S.S.G. § 3E1.1(a), 2 levels are subtracted for acceptance of responsibility. Pursuant to U.S.S.G. § 4C1.1(a), because McFadden meets all of the criteria set forth in U.S.S.G. § 4C1.1(a)(1)-(11), the offense level is decreased by 2 levels. Accordingly, the applicable Guidelines offense level is 9, and, with zero criminal history points, McFadden is in Criminal History Category I, which results in a Guidelines range of 4 to 10 months' imprisonment. (PSR ¶¶ 24-32, 35, 83, 85).

As part of McFadden's plea, he agreed to pay forfeiture in the amount of $75,207.70, which is the amount of forfeiture that Probation recommends. (PSR ¶ 97; PSR p. 25). The Government respectfully requests that the Court enter a consent forfeiture order, an unexecuted copy of which is attached here, and an executed copy of which will be provided to the Court ahead of the sentencing hearing.

## III. Codefendant's Sentence, Relative Culpability, and Other Parties' Recommendations

As for McFadden's codefendant, Ferguson, he faced a Guidelines range of 0 to 6 months' imprisonment, Probation recommended 3 years' probation, Ferguson sought a sentence of probation, the Government recommended a Guidelines sentence, and the Court sentenced him to 3 years' probation and a $25,000 fine. (PSR ¶ 5; see Dkt. 19 at 3).

McFadden is more culpable than Ferguson. To be sure, Ferguson was the CEO of a publicly traded company, whereas McFadden worked as a consultant, but Ferguson did not profit or attempt to profit from the offense, whereas McFadden engaged in the offense to protect a $75,207.70 profit. (PSR ¶¶ 18-19). As Probation put it, "McFadden is more culpable than Ferguson because he had a more obvious and direct financial motive, and because he was a driving force of the creation of the false document." (PSR p. 26).

For McFadden, Probation recommends a sentence of 4 years' probation and a $50,000 fine. (PSR pp. 25-27). McFadden agrees with "the Probation Department's assessment that a below-Guidelines sentence of probation and a fine is sufficient, but not greater than necessary, to achieve the objectives of sentencing in his case." (Dkt. 26 at 2).

## IV. Discussion

The combination of the nature and circumstances of the offense, the history and characteristics of McFadden, the needs for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, weighs in favor of a sentence below the Guidelines range of 4 to 10 months' imprisonment, but above the 3 years' probation imposed on Ferguson, as well as a fine of $50,000 and $75,207.70 in forfeiture.

A substantial sentence is necessary to reflect the seriousness of the offense and to provide just punishment. On April 16, 2020, Edison Nation issued a press release announcing that it had "received over $10 million in orders for the purchase of personal protective equipment," and, on that same date, after the issuance of the press release, Edison Nation's share price increased 197% by market open, and McFadden sold over 30,000 shares of Edison Nation stock, realizing approximately $75,207.70 more than he would have if he had sold before the issuance of the press release. Thereafter, and to protect that profit, McFadden, working with Ferguson, caused the submission of falsified records from a publicly traded company in response to an inquiry from FINRA, a self-regulatory organization important to ensuring the integrity of the securities markets. Edison Nation claimed to have over $10 million in orders, and when FINRA—in an effort to protect investors, other professionals, and the markets—requested documentation to support that claim, McFadden and Ferguson caused the company to submit falsified documents. That is serious conduct deserving of punishment. As Probation put it: "The defendant's submitted finances reveal he has a net worth of approximately $1.8 million, and yet, he engaged in the instant offense for a personal gain of approximately $75,000. The defendant was not motivated by necessity, but rather by greed, which is an aggravating factor." (PSR p. 26).

A substantial sentence is also necessary to promote respect for the law and to afford adequate deterrence to criminal conduct, especially for society generally. Those who work for public companies must understand that submitting falsified records to regulatory bodies will be met with consequences.

The Court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Because McFadden, unlike Ferguson, profited from the conduct, McFadden deserves more punishment than Ferguson received. That is reflected in Probation's recommendation of, and McFadden's assent to, a lengthier term of probation and a heftier fine than those imposed on Ferguson.

Finally, aspects of McFadden's history and characteristics and, again, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, weigh in favor of a sentence below the Guidelines range of 4 to 10 months' imprisonment. As Probation noted: "McFadden's substantial educational and employment history indicates a lower likelihood that he will reoffend. The instant offense was non-violent in nature and lasted approximately one month. The defendant was forthcoming during

the presentence interview, surrendered for the instant offense, and pleaded guilty at the time he surrendered. These factors are mitigating." (PSR p. 26).

## V. CONCLUSION

The Government respectfully requests that the Court impose a sentence below the Guidelines range of 4 to 10 months' imprisonment, but above the 3 years' probation imposed on Ferguson, as well as a fine of $50,000 and $75,207.70 in forfeiture.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

by: Samuel P. Rothschild
Nicholas W. Chiuchiolo
Maggie Lynaugh
Samuel P. Rothschild
Assistant United States Attorneys
(212) 637-1247 / 2448 / 2504

cc: Max Nicholas, Esq. (by ECF)